DANIEL WEATHERFORD v. STATE OF INDIANA.

[No. 2-1073A225. Filed June 2, 1975. Rehearing denied July 8, 1975. Transfer denied November 7, 1975.]

*Stephen J. Cuthbert,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Daniel Weatherford appeals from a conviction for Second Degree Burglary. He was charged by affidavit with that offense on November 22, 1971. His first jury trial was on February 8, 1972. Following a conviction at that time, one of the jurors revealed that Weatherford's brother had offered to pay her $250.00 if she would agree to "hang" the jury. Upon Weatherford's motion, a new trial was granted.

The second trial, held in June of 1972, resulted in a deadlocked jury. The State and Weatherford concurred in the discharge of the jury.

When the time came for Weatherford's third trial, Weatherford was incarcerated in the Federal Penitentiary at Terre Haute. Accordingly, a writ of Habeas Corpus ad prosequendum was issued against the federal marshal and warden ordering the production of Weatherford for the trial.

The third trial began on May 2, 1973. Before trial, Weatherford moved to dismiss the prosecution on the ground that to try him a third time for the same crime constituted cruel and unusual punishment. His motion was denied.

Defense counsel then moved that the writ of Habeas Corpus ad prosequendum be quashed. He stated somewhat cryptically that the motion was based:

> "on the grounds that this is, in fact, a part of a criminal action involving the defendant which was heard in—in the defendant's presence. We would further raise the question as to—is in fact this Writ is, if the Prosecutor is entitled to this Writ, as to the jurisdiction—who has jurisdiction of the defendant."

This motion was also denied.

After the trial had begun, two jurors received anonymous phone calls at home. In one incident, a young male caller asked the juror's wife whether he wanted to "make some money". She hung up immediately. In the other, the caller said he wished to talk to the juror about the jury he was on. The juror hung up without further conversation.

The second juror, while in the presence of some of the other jurors, before commencement of evidence said to the bailiff: "I had a call last night", whereupon the bailiff held up her hands and asked the juror to go with her into the hall before proceeding to discuss the phone call.

After examination by the court, both jurors were discharged. Without examination of the other jurors, Weatherford moved to discharge the entire jury, contending that the statement "I

had a call last night", when coupled with the two jurors' questioning and discharge, would have unfairly prejudiced the jury against the defendant.[1] Weatherford's motion was denied.

The jury returned a verdict of guilty on the second degree burglary charge. The court sentenced Weatherford to a two to five year term and directed that the term not commence until the expiration of Weatherford's federal confinement. The court then remanded Weatherford to the federal authorities.

Weatherford makes the following arguments on appeal:

1. The third trial constituted cruel and unusual punishment.
2. The motion to quash the petition for Writ of Habeas Corpus ad prosequendum should have been granted.
3. The jury should have been discharged upon Weatherford's motions.
4. The trial court should have ordered that Weatherford's sentence run concurrently with his federal incarceration.
5. By returning Weatherford to the federal authorities, the court has waived custody over him and must therefore vacate his sentence.

## I

## THE SEVERAL TRIALS DID NOT CUMULATIVELY CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT

Weatherford argues that consecutive retrials following the granting of his motion to correct errors and the hung jury constituted cruel and unusual punishment under the eighth amendment to the United States Constitution and Article I, § 16 of the Indiana Constitution. He presents no authority for this position and it is our opinion that it is untenable.

In *Shack* v. *State* (1972), 259 Ind. 450, 288 N.E.2d 155, the appellant made a similar claim. Shack had been convicted of first degree murder. An appeal to the Indiana Supreme

---

1. Weatherford actually made separate motions for discharge based upon the statement to the bailiff and upon the fact of the discharge of the two jurors. For purposes of simplicity, we have combined the issues for discussion here.

Court was successful. His second trial resulted in a hung jury. He was convicted again after a third trial. Shack had spent seven years in prison; four of them on "death row". The Supreme Court found no cruel and unusual punishment. In comparison, Weatherford was free on bail throughout his trials.

We find no error in the denial of Weatherford's motion to dismiss.

## II

### THE TRIAL COURT DID NOT LACK JURISDICTION OVER WEATHERFORD

As nearly as we can determine, Weatherford's reasoning with respect to the "jurisdictional" issue is as follows: When the second trial resulted in a hang jury, the trial court somehow lost personal jurisdiction over Weatherford. Thereafter, due to some unspecified alleged irregularity in the proceedings for the writ of Habeas Corpus ad prosequendum, the court failed to "reacquire" jurisdiction, thus nullifying the proceedings below.

It is our opinion that the trial court at all times maintained its jurisdiction over Weatherford, and it is thus unnecessary to inquire into the "reacquisition" of jurisdiction.

Weatherford does not favor us with a cogent explanation of how the trial court might have lost jurisdiction over his person. Personal jurisdiction was obtained when Weatherford first appeared to answer the charge against him. *Green* v. *State* (1952), 230 Ind. 400, 103 N.E.2d 429, *cert. denied* 343 U.S. 987, 72 S.Ct. 1084, 96 L.Ed. 1374.

Once acquired, the trial court had jurisdiction to proceed to final judgment. *Haden* v. *Dowd* (1939), 216 Ind. 281, 23 N.E.2d 676, *cert. denied* 309 U.S. 662, 605 S.Ct. 583, 84 L.Ed. 1009.

Weatherford was not discharged from the jurisdiction of Tippecanoe Superior Court following discharge of the hung

jury, but was released on bail, still bound to appear to answer the charge against him. His involvement with the federal authorities during his freedom cannot vitiate the state court's jurisdiction. As was stated by the United States Supreme Court in *Ponzi* v. *Fessenden* (1922), 258 U.S. 254, 259-260, 42 S.Ct. 309, 310, 66 L.Ed. 607, 611:

> "We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory.
>
> \* \* \*
>
> "One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it."

Moreover, even if the state court had somehow and at some point, lost jurisdiction over Weatherford, and even if the unspecified defect in the Habeas Corpus petition had invalidated the writ, it is not necessary that the conviction be reversed.

Procedural irregularities in the manner in which the defendant is brought before the court do not affect the jurisdiction thereby obtained. *Bryant* v. *State* (1972), 257 Ind. 679, 278 N.E.2d 576; *Frisbie* v. *Collins* (1952), 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; *Ker* v. *Illinois* (1886), 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421.

## III

### THE TRIAL COURT'S REFUSAL TO DISCHARGE THE JURY WAS NOT AN ABUSE OF DISCRETION

Weatherford asserts that after the two jurors were discharged, the trial court should have granted his motions for discharge based upon the assertion that:

1. The other jurors knew that the two jurors had been questioned and then discharged, and this created an atmosphere of prejudice against Weatherford, and
2. The statement "I had a call last night" made in the presence of some of the jurors, combined with the discharge of the two jurors created prejudice in the minds of the remaining jurors.

Even if these incidents did not require the declaration of a mistrial, Weatherford argues, the trial court had a duty to *sua sponte* examine the remaining jurors.

We must start our discussion by recognizing that:

"The decision which circumstances occurring during the course of the trial are so prejudicial as to require the withdrawal of the case from the jury rests largely with the trial judge. *Duke* v. *State* (1968), 249 Ind. 466, 233 N.E.2d 159. Our review of the trial court's rulings on such matters, by its very nature, must concentrate on the peculiar situations and facts of each case as they present themselves. *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312." *Martin* v. *State* (1974), 262 Ind. 232, 314 N.E.2d 60, 69-70.

Further,

". . . jurors need not be absolutely insulated from all extraneous influences regarding the case and . . . such exposure, without a showing of influence, will not require a new trial. *Irvin* v. *Dowd* [(1961), 366 U.S. 717], *Harris* v. *State* (1967), 249 Ind. 681, 231 N.E.2d 800." *Lindsey* v. *State* (1973), 260 Ind. 351, 295 N.E.2d 819, 823.

*Lindsey* sets forth a two step duty of inquiry for the trial judge:

"*If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively* to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof.

\* \* \*

"At all stages, the trial court must have discretion to make the determination, within the context of the particular

circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril." (Emphasis supplied) 295 N.E.2d at 824.

The trial court's duty to *sua sponte* examine the remaining jurors arises only when "the risk of prejudice appears substantial." That risk does not loom large in the case before us. There is no evidence that either juror discussed their calls with the remaining members. One stated that he had not; the other had called the judge at home immediately after receiving the call. The statement, "I had a call last night", which *might* have been overheard by some jurors, is not so revealing as to give rise to substantial risk of prejudice.

*Liddle* v. *State* (1973), 260 Ind. 548, 297 N.E.2d 801 also illustrates the nature of the court's duty to investigate. A prejudicial newspaper article had been printed, but there was no evidence of exposure to any member of the jury. Defense counsel declined to question the jurors and the trial court properly overruled Liddle's motion for a mistrial. Subsequently, however, one juror was observed with a copy of the paper and at that time an inquiry became mandatory.

Had Weatherford requested that the remaining jurors be questioned, a different question might be before us. He did not do so and we cannot say on these facts that the trial court abused its discretion in denying the motion for a mistrial or in not *sua sponte* questioning the jury. *Lindsey, supra. See also Shack* v. *State, supra,* 288 N.E.2d 155, 163.

## IV

## THE TRIAL COURT WAS NOT REQUIRED TO ORDER WEATHERFORD'S SENTENCE BE SERVED CONCURRENTLY WITH UNEXPIRED FEDERAL SENTENCE

Weatherford's 2-5 year sentence was ordered to "not commence to run until the expiration of four concurrent sentences of 30 months each, which the defendant is now serving at the United States Penitentiary at Terre Haute, Indiana."

In support of his contention that the trial court had a duty to order his Indiana sentence to run concurrently with the federal sentence, Weatherford cites IC 1971, 35-7-1-1, Ind. Ann. Stat. § 9-2209 (Burns 1974 Supp.) which grants the trial court judge the discretion to suspend sentences for most crimes. If the court could suspend the sentence, he argues, it must also have the power to reduce it by ordering it served concurrently.

This argument merely begs the question. In order to obtain reversal, Weatherford must establish not only that the trial court had the ability to order the sentence so served, but that the court was *required* to do so.

As was stated by the Indiana Supreme Court in *Bewley* v. *State* (1966), 247 Ind. 652, 654, 220 N.E.2d 612, 613:

> "We think this point may be disposed of by saying that there is no constitutional right on the part of a criminal to serve his sentences concurrently for various crimes. To so hold would minimize the penalty for the commission of additional crimes, since the sentences could all be served more or less concurrently."

While it has been noted as a general proposition in other jurisdictions that "concurrent sentences may be ordered only when they are to be served in the same institution", it may be said at the very least under Indiana law that a sentence need not be ordered served concurrently with an unexpired sentence being executed in another jurisdiction. *Alford* v. *State* (1973), 155 Ind. App. 592, 294 N.E.2d 168.[2]

### V

### THE STATE HAS THE RIGHT TO DELAY COMMENCEMENT OF WEATHERFORD'S SENTENCE UNTIL COMPLETION OF HIS FEDERAL INCARCERATION

Weatherford argues that when he was returned to federal prison following trial, the state lost jurisdiction over him,

---

2. Ind. Ann. Stat. § 11-2-1-1 (Burns Code Ed.) as noted in *Baromich* v. *State* (1969), 252 Ind. 412, 249 N.E.2d 30, would require a sentence to commence on the day of sentencing. That provision, however, was declared unconstitutional in *Pearcy* v. *Marion Crim. Ct.* (1971), 257 Ind. 178, 274 N.E.2d 519.

and, allegedly having no means by which to obtain control over him, must discharge him. Weatherford cites no authority for his amazing conclusion, and we find that such authority as does exist is contrary to his position.

In *Ponzi* v. *Fessenden, supra,* the defendant was temporarily transferred from federal incarceration pursuant to a writ of habeas corpus to stand trial in state court. After conviction, he was returned to the federal institution. The Supreme Court noted:

> "Nor, if that be here important, is there any difficulty in respect to the execution of a second sentence. It can be made to commence when the first terminates. *Kite* v. *Commonwealth,* 11 Metc. (Mass.) 581, 585, an opinion by Chief Justice Shaw. *Ex parte Ryan,* 10 Nev. 261, 264; *Thomas* v. *People,* 67 N. Y. 218, 226." 258 U.S. at 265, 42 S.Ct. at 312, 66 L.Ed. at 613. *See also State ex rel. Smith* v. *Dowd* (1955), 234 Ind. 152, 125 N.E.2d 208.

The principles of comity in a system of dual sovereignties permit the procedure which was followed in this case. *Ponzi* v. *Fessenden, supra; Zerbst* v. *McPike* (1938 5th Cir.), 97 F.2d 253.

Judgment affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 328 N.E.2d 756.