Archie TOBIAS, Petitioner,

v.

Harold SMITH, Superintendent, Attica
Correctional Facility, Respondent.

Civ–76–555.

United States District Court,
W. D. New York.

April 23, 1979.

Susan N. Herman, Prisoners' Legal Services of New York, New York City (George M. Hezel, Prisoners' Legal Services of Buffalo, Buffalo, N.Y., of counsel), for petitioner.

Robert Abrams, Atty. Gen. of the State of New York, New York City (James L. Kennedy, Asst. Atty. Gen., Buffalo, N.Y., of counsel), for respondent.

CURTIN, Chief Judge.

Archie Tobias has submitted this petition for a writ of habeas corpus on the grounds that his incarceration is in contravention of the sixth and fourteenth amendments to the Constitution of the United States. The petitioner was indicted and charged with burglary in the first, second and third degree, with robbery in the first and third degree, with petit larceny, and with posses-

sion of a weapon as a misdemeanor. On January 31, 1975, the petitioner was convicted in County Court, County of Erie, as charged, with the exception of the first degree burglary count, on which he was found guilty of second degree burglary.

On March 10, 1975, the petitioner moved to set aside the verdict on the grounds that the trial court committed reversible error in failing to suppress certain identification testimony or, alternatively, in failing to hold a hearing on the issue of jury prejudice. This motion was denied and on March 11, 1975 petitioner was sentenced.

The Appellate Division of the Supreme Court of New York, Fourth Department, unanimously affirmed petitioner's conviction on January 16, 1976. In its memorandum opinion, the Appellate Division dismissed the petitioner's arguments that he was deprived of his constitutional rights by the trial court's failure to suppress the identification testimony and by its refusal to hold a hearing on the issue of jury prejudice. Leave to appeal to the New York Court of Appeals was denied on April 23, 1976.

The petition for a writ of habeas corpus seeks the evidentiary hearing on the issue of jury prejudice which was denied in the state courts. Since the petitioner has exhausted the remedies available to him in the state courts, he is properly before this court.

The petitioner was charged with crimes which occurred on the campus of the State University of New York at Buffalo. Two college students were robbed in their dormitory rooms in separate incidents on March 23 and on March 27, 1974.

On March 23, 1974, Andrew Simon was robbed at knife point. Mr. Simon was unable, on the night of the incident and again on the following day, to identify his assailant when he viewed a photo book of the Campus Security Force which contained a photograph of the petitioner. Six days after the incident, Mr. Simon again viewed the photo book. He was advised by a campus security officer that they were holding a suspect and that the suspect's picture had

been added to the book. Mr. Simon picked out a freshly-taken polaroid photograph of the petitioner. This photograph showed petitioner with a beard, which the robber had. The picture of the petitioner in the photo book, as originally shown to Mr. Simon, showed petitioner to be clean-shaven and two and one-half years younger.

Frank Szczublewski, a Campus Security officer, apparently observed the person who robbed Simon on the night of the incident. The officer had seen a person leaving the campus dormitory and, after hearing a bulletin with the description of the robber given by Mr. Simon, he realized that the person he had seen could be the perpetrator. On March 29, 1974, the officer went to the Campus Security office. He first viewed the photo book which contained both photographs of the petitioner. He was unable to identify the petitioner from this display. Officer Szczublewski did identify the petitioner as the man he had seen leaving the dormitory, however, when he was taken to observe the petitioner in a room where the petitioner was being held on a trespass charge.

On March 27, 1974, Nels Larson was robbed in his dormitory room at the campus. Mr. Larson described his assailant as 6'3" or 6'4", husky, black, and as having a beard. During the afternoon following the incident, Larson cooperated with the Amherst Police Department to produce a composite sketch of the robber; at this time no mention was made of a beard and the sketch did not include one. Two days later, Larson identified the petitioner from the contemporary photograph in the photo book of the Campus Security Force. As with Simon, the other student robbed, Larson has failed to identify the petitioner from the earlier photograph of him and Larson was advised beforehand that the police were holding a suspect whose picture had been added to the book.

A Wade Hearing was conducted at which the trial court judge denied petitioner's motion to suppress the identification testimony of the three witnesses. At trial, Simon, Larson and Szczublewski all identified the

petitioner. The petitioner's sole defense was that the witnesses were mistaken in their identification and the jury was charged that the identification of the petitioner was the most important issue in the case.

Finally, prior to trial petitioner's attorney conducted an extensive voir dire of the prospective jurors. The affidavit of petitioner's trial attorney states that the jurors were questioned about their racial feelings toward black people and toward the petitioner. All jurors who were sworn indicated they had no prejudice toward black people or toward the petitioner. No record, however, was made of the voir dire.

After trial, but prior to sentencing, the petitioner moved to set aside the verdict, or for a hearing, on the grounds of jury prejudice. This motion was based on the affidavit of one of the jurors. The juror stated that the jury consisted entirely of white people and that it was obvious to her that several members were prejudiced against the petitioner because he was black. She stated specifically:

4. That although the issue of identification was argued vigorously, particularly the fact that the witnesses could not identify a photo of the defendant, the jury foreman told everybody that it didn't matter because "You can't tell one black from another. They all look alike".

5. That another juror said that we should take the word of two white victims as opposed to this black defendant.

*See* Affidavit of Esther Gaglia, attached to Petitioner's Amended Petition for a Writ of Habeas Corpus. As noted above, petitioner's motion for a hearing was denied by the trial judge and affirmed by the Appellate Division.

It is stated generally that a juror may not impeach his or her own verdict once the jury has been discharged. *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). This rule promotes *inter alia* the public policies of discouraging the harassment of jurors by losing parties, of maintaining verdict finality, and of encouraging open discussion among jurors. *Unit-ed States v. Dioguardi*, 492 F.2d 70 (2d Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *Miller v. United States*, 403 F.2d '77 (2d Cir. 1967). Other public policies conflict with this rule, however. The integrity of the judicial system depends on the guarantee that every litigant receive a fair trial. The concomitant policy of "redressing the injury of the private litigant," where a verdict was reached by a jury which was not impartial in an individual case, requires an accommodation of the conflicting policies. *Government of the Virgin Islands v. Gereau*, 523 F.2d 140, 148–49 (3d Cir. 1975) (quoting *McDonald, supra*, at 267, 35 S.Ct. at 784).

This accommodation is embodied now in Rule 606(b) of the Federal Rules of Evidence. That rule provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

A jury member may testify or submit an affidavit as to the existence of any extraneous prejudicial influence, but not as to whether or not that influence operated upon him or another juror.

In addition to consideration of Rule 606(b), the sixth amendment guarantee of a fair trial to a criminal defendant injects a constitutional element into the evidentiary question. *See, e. g., Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). As noted by the New York Court of Appeals, when the Supreme Court has held

"that a particular series of events, when proven, violates a defendant's constitutional rights, implicit in that determination is the right of the defendant to prove facts substantiating his claim." *People v. DeLucia,* 20 N.Y.2d 275, 278, 282 N.Y.S.2d 526, 528, 229 N.E.2d 211, 213 (1967). Whatever the scope of a jurisdiction's non-impeachment rule, a court determination of whether particular jury events are open or closed to inquiry must consider a defendant's sixth amendment rights to confront witnesses, to the assistance of counsel, and to an impartial jury. *See Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Parker, supra,* at 364, 87 S.Ct. 468, 17 L.Ed.2d 420; *People v. Leonti,* 262 N.Y. 256, 186 N.E. 693 (1933).

▪ Even when a party has overcome the obstacle of producing *competent* evidence to attack a jury verdict, he still must establish *adequate* grounds to overturn the verdict, including a showing that the jury misconduct prejudiced the party seeking to impeach the verdict. *See, e. g., Gereau, supra,* at 148, 150–53. There is no comprehensive set of grounds which have been held sufficient to overturn a verdict; each case necessarily depends on its own facts.

▪ As noted by one authority, evidence of juror bias or prejudice, such as that alleged in this case, manifested in comments during the deliberations, is one type of jury conduct which presents special difficulties. *See* 3 *Weinstein's Evidence,* at 606–35 to 606–37. The problem of differentiating between proof of the objective statements themselves and proof of the subjective effect of them is not easy to resolve. Moreover, where comments indicate prejudice or preconceived notions of guilt, statements may be admissible not under F.R.E. 606(b) but because they may prove that a juror lied during the voir dire. *Id.* Such evidence can be used to show that a juror should be disqualified by his prejudice and that the verdict in which he participated was a nullity. *People v. Leonti, supra,* 262 N.Y. at 258, 186 N.E. 693.

Neither party points to any decisions directly in point. The petitioner, however, contends that the cases he relies upon support his argument that this court should hold a hearing to determine whether provable jury misconduct occurred. This court agrees.

The initial question to be resolved is whether the court can receive and consider the statements contained in the affidavit supporting the petition. Are they merely matters of jury deliberations or of the subjective effect of statements which cannot be used to impeach a verdict? Or, do they constitute objective evidence of matters improperly introduced and considered by the jury in its verdict? The respondent argues that the statements are not evidence of extraneous influences but are merely "subjective opinions, their attitudinal expositions, or their philosophies . . . ."

▪▪ Under Rule 606(b) of the Federal Rules of Evidence, and under the cases which the rule codifies, a court may receive evidence of the fact that extraneous prejudicial influences were improperly brought to the jury's attention. My conclusion is that the statements in the juror's affidavit are sufficient to raise a question as to whether the jury's verdict was discolored by improper influences and that they are not merely matters of jury deliberations.

In two cases pointed to by the petitioner, courts set aside verdicts based on allegations of jury prejudice. In *People v. Leonti, supra,* a post-conviction affidavit alleged that a juror had uttered a statement which showed ethnic prejudice. After analyzing the case in terms of the disqualification of the juror for prejudice, the New York Court of Appeals ordered a new trial. In *State v. Levitt,* 36 N.J. 266, 176 A.2d 465 (1961), the Supreme Court of New Jersey held, in a case in which juror anti-Semitism was alleged, that a finding that any juror "was so biased as to prevent him from objectively weighing the evidence" is sufficient to set the verdict aside. 176 A.2d, at 468. The court also noted:

Where there are sufficient allegations that the jury's verdict was discolored by improper influences [introduction of reli-

gion into the jury room], the trial judge should investigate the truth of the charges so that he may determine whether a new trial is warranted. . . . Though the trial judge cannot examine the thought processes ·of the jurors in reaching their verdict, he can receive jurors' evidence as to the existence of conditions or the occurrence of events to determine whether they showed an adverse prejudice bearing on the verdict. . .

176 A.2d at 467–68.

There can be no quarrel with the proposition that the race of a defendant is an improper consideration for a jury, just as ethnic origin and religion are. *Cf. United States ex rel. Haynes v. McKendrick*, 481 F.2d 152 (2d Cir. 1973). There should be no injection of race into jury deliberations and jurors who manifest racial prejudice have no place in the jury room. Certainly, where a *probability of* such *prejudice* can be demonstrated, it would constitute sufficient grounds for ordering a new trial. *See McKendrick, supra*, at 159, and *United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir. 1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971), both of which discuss the "probability of prejudice" test.

The court believes, therefore, based upon the above discussion, that a hearing should be held on the question of jury prejudice. On a petition for a writ of habeas corpus, a district court may hold a hearing where issues are raised which should not and cannot be resolved by affidavit. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Bulger v. McClay*, 575 F.2d 407 (2d Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978). At this hearing the parties will have an opportunity to question those jurors who can be found as to what was said and what occurred. This hearing will also present an opportunity to clarify the context in which the alleged statements were made, if they were. Such a clarification will be important in determining whether statements occurred which created a probability of prejudice to the petitioner or whether a juror was so biased as to be disqualified from serving on a jury. If either situation is demonstrated, the petitioner's sixth amendment right to a trial by an impartial jury would have been denied and appropriate relief would be in order.

The court directs the parties to meet with the court on May 7, 1979 at 9:00 a. m. to set the time for a hearing.

So ordered.