**UNITED STATES of America**

v.

**Richard JONES, John Jones, Andre Jones, Donald Nickens.**

**Crim. Nos. 80–377–1 to 80–377–4.**

United States District Court,
E. D. Pennsylvania.

Aug. 14, 1981.

Howard B. Klein, Joseph M. Gontram, Asst. U. S. Attys., Philadelphia, Pa., for United States.

Joseph C. Santaguida, Philadelphia, Pa., for defendant Richard Jones.

Frank D. Branella, Philadelphia, Pa., for defendant John Jones.

Leonard Tishgart, Philadelphia, Pa., for defendant Andre Jones.

Darryl Irwin, Philadelphia, Pa., for defendant Donald Nickens.

## MEMORANDUM

GILES, District Judge.

■ Defendants move for a new trial following their conviction for conspiracy to distribute heroin and for related substantive counts. The grounds raised by defendants are admission of evidence of other crimes, and lack of an impartial jury.[1] In addition, the court has raised *sua sponte* the question whether it erroneously excluded impeachment concerning relations between a government witness's wife and defendants. Because the last ground is plain error, a new trial will be granted.

## I. OTHER CRIMES EVIDENCE

The alleged error involving admission of evidence of other crimes breaks down into two categories: first, mention of methamphetamine or "speed"; second, heroin dealings not mentioned in the indictment or bill of particulars.

1. As reasons for a new trial, defendants raise numerous other grounds which are factually or legally insubstantial. The contentions that: the verdict was contrary to the evidence, the weight of the evidence, and the law; the evidence necessarily raised a reasonable doubt of guilt; and the government used peremptory challenges to exclude blacks from the jury; are without factual support.

Also, defendant Andre Jones contends that testimony of a government witness was erroneously admitted because the government failed to give defendants the witness's hand-written statement. This was not error because the government turned over the only statement in its possession, which was typewritten.

Several defendants argue that the verdict against them was not unanimous. The jury initially indicated that it had unanimously convicted five defendants. When, however, the jury was polled, one juror indicated that she had reservations about one defendant—Michael Nickens. The court granted a mistrial as to him. There is no indication, however, that the verdict was less than unanimous as to the captioned defendants.

Defendants contend that a mistrial was warranted because in closing argument, Michael Nickens' attorney admitted his client's guilt and asked for sympathy. In fact, counsel did not concede guilt. Defendants argue that it was error to submit the indictment to the jury. They supply no reason why it is generally incorrect to give the jury an indictment, or why

### A. *Methamphetamine*

Defendants were indicted for conspiracy to distribute, and distribution of, heroin. Twice during the trial mention was made of methamphetamine or "speed."[2] This mention occurred twice during the testimony of government witness Lawrence Ford. Mr. Ford stated that on January 14, 1980, he went to the house of defendant Richard Jones with a government informant. The informant arranged a drug buy. Later, Mr. Ford and the informant were met at the parking lot of the Stenton Diner by a go-between who handed the informant a package containing a white substance, which turned out to be "speed." On March 25, 1980, Mr. Ford arranged to buy heroin through defendant Donald Nickens. This contraband was delivered at the Pickway Supermarket. In the same bag containing the heroin, Mr. Ford noticed a large amount of "speed."

■ Neither defendant objected to this testimony regarding methamphetamine.

this particular indictment should not have been submitted. This argument is frivolous.

Defendant Donald Nickens argues that the jury was charged while counsel was absent, and that the jury charge was erroneous. Counsel was voluntarily absent for a portion of the charge. *Cf.* Fed.R.Crim.Proc. 43(b)(1) (defendant waives right to be present by voluntary absence). In any event, because counsel has failed to mention any particular part of the charge as erroneous, counsel's absence was harmless.

Finally, several defendants argue that it was prejudicial to allow a government witness to testify that he was in the government's witness-protection program. His testimony was in response to one of defendant's questions. He went on to say that he was in the program only in connection with other unrelated cases. Thus, contrary to defendants' arguments, the jury could not have inferred that the witness feared for his life from these defendants. Admission of this testimony was not error.

2. I have been greatly hampered in resolving all aspects of the new-trial motions for two reasons. First, except when specifically ordered, all counsel have failed to file memoranda in support of their positions or to move timely for extensions. *See* Fed.R.Crim.Pro. 33; E.D.Pa.R. Crim.Pro. 14. Second, counsel have not ordered a transcript of the trial. Thus, my rulings are based on my notes, memory, and review of portions of the untranscribed notes of testimony.

Thus, the legal question becomes whether use and admission of this testimony was plain error affecting substantial rights of the defendants. See Fed.R.Crim.Pro. 52(a) & (b); Fed.R.Evid. 103(a)(1) & (d). The evidence concerning methamphetamine tended to show that during the period of the conspiracy, the defendants arranged drug sales by a preliminary meeting at the house of one of the defendants. Later, the drugs would be delivered by an intermediary at a neutral, semi-public location. Thus, this evidence was not offered to show character, see id. 404(a), but rather showed opportunity and method. See id. 404(b).

Evidence of method was legitimately important to the government's case. Some defendants, particularly Richard Jones, limited their contacts with certain government witnesses by taking part only in the preliminary meeting, and not acting as intermediaries. The evidence against these defendants was partly circumstantial. Certain government witnesses participated in few or no preliminary meetings, but were present for many drug deliveries. Evidence that the deliveries used the same method, intermediaries, and packaging as in transactions where Richard Jones was known to have been at the preliminary meeting tended to tie him into other transactions. .

Defendants are correct to point out that mention of methamphetamine involved some danger of unfair prejudice to their clients. Had defendants objected to this evidence, it might have been excluded. Defendants, however, failed to object or ask for corrective instructions. Because this evidence was relevant, brief, raised by the witness, rather than the prosecutor, and was of non-constitutional dimensions, I cannot find that its admission was plain error. See 1 Weinstein's Evidence ¶ 103[06], at 103–50 to –51 (1980).

### B. Other Heroin Transactions

 Defendants raise as error evidence of heroin transactions mentioned neither in the indictment nor in the bills of particu-

lars. The evidence encompassed transactions taking place from approximately January, 1980, to August, 1980. Count I of the indictment charged all defendants with conspiracy to distribute heroin during that period. Thus, although there may not have been a substantive count corresponding to each transaction in evidence, evidence of each transaction went directly to the conspiracy charge. Even if the transactions were omitted from the indictment and bills,[3] they were admissible under Rule 404(b).

 Defendants also argue that even if admissible, failure to mention the transactions deprived them of an opportunity to prepare a defense. Defendants were not entitled to a list of all overt acts. See United States v. Armocida, 515 F.2d 49, 54–55 (3d Cir.), cert. denied, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). Therefore, I can find no error in their admission.

## II. LACK OF IMPARTIAL JURY

Defendant Donald Nickens contends that the jury believed testimony of police over that of other witnesses simply because they were police, thus violating their jurors' oaths. In particular, defendant argues that at least one juror was biased in favor of police and had lied about this bias during voir dire. In support of this contention, the attorney for defendant Michael Nickens states that after trial, one juror told him that another juror had argued in favor of believing the police.

 There is some question whether a juror could testify about this matter. See Fed.R.Evid. 606(b). Compare, e. g., Government of Virgin Islands v. Gereau, 523 F.2d 140, 149–50 (3d Cir. 1975) (Rule 606(b) bars evidence of intra-jury influence on verdict), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976), with Tobias v. Smith, 468 F.Supp. 1287, 1290 (W.D.N.Y.1979) (juror's affidavit may be admissible to prove a juror lied during voir dire). See generally 3

---

**3.** Defendants have failed to specify which pieces of evidence which were not in the indictment or bills.

*Weinstein's Evidence* ¶ 606[04] (1978 & Supp. Dec. 1980); *id.* at 606–34 to –37. I need not decide that question, however, because defendants have not offered a juror's affidavit. Furthermore, counsel's statement is hearsay, not within any exception. Finally, even if admissible, the substance of the statement shows only that, in context, one juror contended that credibility issues should be resolved in favor of police. The statement does not demonstrate a juror believed police testimony solely because it was given by police, or that a juror lied during voir dire or otherwise came within the rule of *Tobias, supra.*

## III. IMPEACHMENT

On cross-examination of a government informant, Robert Barron, counsel for defendant Donald Nickens stated at side bar that he wanted to inquire whether the informant's wife had been having an affair with Donald Nickens as well as some of the other defendants. Neither of the other defendants in their cross-examination had raised this issue. Donald Nicken's counsel was precluded from cross-examining on this area on the grounds that he could not (or would not) introduce corroborative evidence, and because the questions would have been inflammatory, confusing, and prejudicial. After careful review, I have decided that the wrong legal tests were applied; that under the proper tests, certain questions in this area were admissible; and that total preclusion of inquiry in this area of possible bias was plain error prejudicing all defendants.

■ Testimony is relevant if it would tend to change the probability of existence of bias or prejudice by the witness. *See* Fed.R.Evid. 401. Thus, a witness who believes his wife has been seduced by a defendant may be said to have a motive for testifying falsely against the defendant.[4] Contrary to the government's argument,

the question is relevant. *See generally, e. g., McCormick on Evidence* § 40 (Cleary ed. 1972 & Supp. 1978); 3 *Weinstein's Evidence* ¶ 607[03] (1978 & Supp. 1978); 2A *Wigmore on Evidence* §§ 943–949 (Chadbourn rev. ed. 1970 & Supp.1981); *see also United States v. Moore*, 529 F.2d 355, 357–58 (D.C.Cir. 1976).

■ One reason for exclusion of questions was lack of collateral evidence. Although collateral evidence may be introduced to show bias, *e. g.*, 3 *Weinstein's Evidence* ¶ 607[3], at 607–17, collateral evidence is not prerequisite to cross-examination. The condition for inquiry into bias on cross-examination is whether counsel has a good-faith basis for the question. Here, counsel stated that his client had told him he had an affair with the witness's wife. This was an adequate good-faith basis for questioning.

 Another reason for exclusion was the danger of undue prejudice or confusion. If one defendant's attorney had asked if the witness suspected his wife of having sexual relations with another defendant, and received a positive response, the other defendant would have been painted as an adulterer. This would have been substantially and unfairly prejudicial and confusing as to other defendants. Thus, Donald Nickens' counsel properly was prevented from inquiring about the witness's knowledge of affairs with other defendants. Danger to Donald Nickens himself, however, is another matter. That is his risk to take. *See United States v. Moore*, 529 F.2d at 357–58, *after remand*, 554 F.2d 1086, 1091 (D.C.Cir. 1976). Because the questioning could have been limited to avoid exposing other defendants to unfair prejudice (by restricting each counsel to inquiring only about affairs with his own client), total exclusion was erroneous.

4. Because he may lack first-hand knowledge, the witness may be incompetent to testify whether there actually was an affair. The permissible inquiry should have been whether the witness had reason to believe the defendant was having an affair with his wife. Thus, the proper question at trial is whether the witness believes or has reason to believe that his wife and the defendant had an affair.

The error was "plain" because it interfered with a substantial right of the defendant. "The exposure of a witness' motivation in testifying is so significant that in a criminal case curtailment of this right may amount to a denial of confrontation or due process rights." 3 *Weinstein's Evidence* ¶ 607[03], at 607–18. (footnotes omitted). Thus, I rule that the error was of constitutional proportions. Given that the testimony of Barron was central to the government's conspiracy case, preclusion of impeachment was not harmless. Each of the overt acts listed in the indictment in furtherance of the alleged conspiracy constituted separate substantive counts as to various defendants. Because the conspiracy evidence through Barron was inextricably interwoven with most of the evidence presented by other witnesses as to the substantive counts, it cannot be firmly said that the prejudice was limited to the conspiracy count. Finally, if evidence of bias had convinced the jurors that the witness had lied about one defendant, the jurors could have believed he would lie about the remaining defendants. Thus, it cannot be said that the error was harmless as to the remaining defendants, even though they may not have elected to take the risk in their own cross-examinations of Barron.

In conclusion, because exclusion of impeachment was error, affected substantial rights, and harmed all defendants, a new trial will be granted.

I have entered a separate appropriate order.