Benjamin **RODRIGUEZ, Jr.**

v.

**Jack R. DUCKWORTH, Warden and Indiana Attorney General, Respondents.**

No. S82–400.

United States District Court,
N.D. Indiana,
South Bend Division.

June 21, 1983.

Benjamin Rodriguez, Jr., pro se.

Kermit R. Hilles, Deputy Atty. Gen., for Linley E. Pearson, Ind. Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM and ORDER

SHARP, Chief Judge.

Petitioner, Benjamin Rodriguez, is a state prisoner confined at the Indiana State Prison at Michigan City, Indiana. Rodriguez was convicted in the Superior Court of Shelby County of the crimes of murder in the commission of a felony, commission of a felony while armed and conspiracy to commit a felony, for which he received sentences of life imprisonment and a term of from two to fourteen years' imprisonment to be served concurrently. These convictions were affirmed on direct appeal by the Indiana Supreme Court in *Rodriguez v. State,* 270 Ind. 613, 388 N.E.2d 493 (1979).

In his direct appeal, Rodriguez raised several issues including denial of a motion for mistrial based on the fact that phone calls were received by two jurors during the course of the trial. In his petition before this Court Rodriguez asserts, as his sole issue, that his constitutional right to a fair and impartial trial was denied when two of the jurors received what he believes were threatening phone calls during the trial, and the judge failed to declare a mistrial and select a new jury. Accordingly, Petitioner has exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c), and this issue is properly before this Court. *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). The state court record has been presented to and examined by this Court as required by *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The facts of this case are that Rodriguez was on trial in the Shelby Superior Court for a series of charges arising out of the death of Ernestinea Garcia. In the early morning of July 28, 1977, a juror and an alternate juror received what might be characterized as intimidating telephone calls. Each call was relatively limited in duration and was terminated by the recipient of the call prior to any indication of who might have made the call or the actual substance of the call being related. The calls were terminated at a time when each caller had indicated that the recipient had better listen, or words to that effect (Tr. 261). Each of these jurors so advised the

judge who spoke to them in chambers.[1] One of the jurors said the person who called her "was possibly Spanish or Mexican" (Tr. 263–264). Since both the defendant and the victim and her family were of Spanish heritage, no conclusion could or should be drawn from this fact. During the interview, the judge received assurances from each juror that the calls would not influence their decision.

Rodriguez moved for a mistrial which was denied. The judge advised the jury that:

It was brought to my attention just prior to our beginning this morning that at least two jurors received telephone calls at approximately 1:00 last night. They were, at best, suspicious. Perhaps, attempted intimidation. Did any other juror receive calls last night that was in any way suspicious? (Pause) After discussing these calls with the recipients, I feel I should instruct you how to respond to that sort of situation if it happens again to any of you. I have instructed the Sheriff's Department to uh, be aware of where you live and to uh, patrol your uh, residence particularly. For that purpose the Sheriff shall have a Deputy here at the time we recess this afternoon to talk to each of you for the purpose of obtaining your address and uh, specific direction on exactly where it is you live so there can be no mistake. If any of you should receive a phone call, you should call the uh, you should terminate the call as soon as it becomes at all suspicious to you if you don't recognize the caller. And you should call the Sheriff's Department at once after you terminate the call. Discussion with the jurors indicated that there is no way of knowing who the caller was. Each call was terminated well before that could have been determined. There was no discussion of any specific subject and uh, so there is no way to say

where the call came from or who it came from. As likely an explanation as any is that it was some prank who is getting some kind of a cheap thrill out of that sort of a situation. You should not in any way allow the fact that these calls were made last night to interfere with your attention to the matters that transpire in this Court Room and you should specifically not let them enter into uh, your consideration in any way by speculating about where they might have come from or who may have made them at the time you deliberate. Call your next witness. (Tr. 265–67)

The Petitioner asks this Court to note that the trial judge advised the jury that "as likely an explanation as any (for the calls) is that it was some prank who was getting some kind of cheap thrill," and states that this is purely speculation. According to the Petitioner "There is no basis in fact that these were 'crank' calls or 'prank' calls. They were in fact, threatening phone calls." The calls were cut-off before the caller could say more than a few words and, unless Petitioner has some special knowledge, there is no more basis on the record for calling them threatening calls than prank calls.[2] The trial judge gave the jurors all the available information and his assessment of the possible reasons for the calls. There was nothing improper in this procedure.

The Petitioner also misreads and misinterprets the trial judge's actions in reassuring the jurors that help would be available if an actual problem did result as "really *intimidat*(ing) *the entire jury*" (emphasis in original). In fact, from the record, there can be no doubt that the judge's statements were meant to reassure the jurors.

■ As the Petitioner asserts in his memorandum, private communications with jurors by third parties are to be scrutinized

[1]. Petitioner asks this Court to note that the Prosecuting Attorney was not present when the jurors were questioned. However, Rodriguez' counsel was present and he can hardly assert that the absence of the prosecutor disadvantaged him in any way.

[2]. The judge also noted at the outset of his statement to the jury that the statements were "perhaps attempted intimidation." Thus, the judge did inform the jurors that there was a possibility that this was intimidation.

carefully and the law should guard the sanctity of the jury's right to operate as freely as possible from purposeful outside communications. *Remmer v. United States,* 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956); see also, *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892).

> In a criminal case, any private communications, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court ... (*Remmer v. United States,* 347 U.S. at 229, 350 U.S. at 379.)

Thus, once it is shown that outside communication with a juror occurred during the course of a trial, prejudice is presumed and a "heavy" burden is placed on the state to show that the communication was harmless to the defendant. *Remmer, supra; United States v. Herring,* 568 F.2d 1099 (5th Cir. 1979); *United States ex rel. Tobe v. Bensinger,* 492 F.2d 232 (7th Cir.1974); *United States v. Winters,* 434 F.Supp. 1181 (N.D. Ind.1977), *aff'd,* 582 F.2d 1152 (7th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 332 (1978).

A careful examination of the record discloses that the trial judge made it clear that the nature and purpose of the phone calls were ambiguous and could have been made for different reasons. After careful consideration, the trial judge determined that the jurors and alternate juror could render a fair and impartial decision, not compromised by the calls.

 The trial judge's determination is to be accorded great weight, as he is in the best position "to sense the atmosphere of the courtroom" as no reviewing court can on a printed record. *United States v. Read,* 658 F.2d 1225, 1241 (7th Cir.1981), *quoting United States v. Barnes,* 604 F.2d 121, 144 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *see also, Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *United States v. Bagnariol,* 665 F.2d 877 (9th Cir.1981), *cert.*

*denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *Bruce v. Duckworth,* 659 F.2d 776, 779 (7th Cir.1981), *cert. denied,* 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 673 (1982); *Snyder v. Coiner,* 510 F.2d 224 (4th Cir.1975). Further, the trial judge's interview and decision was consistent with the proper procedure for handling juror misconduct and possible prejudice under Indiana law. *See, e.g., Chambers v. State,* Ind., 422 N.E.2d 1198 (1981); *Weatherford v. State,* 164 Ind.App. 340, 328 N.E.2d 756 (1975).

In this case, unlike *Remmer,* the contact with the jurors was known to the Petitioner and his counsel from the start and the jurors were given the available information in a concise and factual manner. No juror in this case was singled out for the sort of intensive questioning as occurred in *Remmer* when the F.B.I. questioned juror Smith. Also, unlike *Remmer,* while there may have been a contact there was no communication or tampering with jurors because the calls were terminated before the caller could pass any information to the jurors. The trial judge investigated the claim in the presence of Rodriguez' counsel and determined that the contact was not prejudicial to Rodriguez. Even if one of the jurors thought the caller might possibly have been Hispanic, neither the jurors nor any court could draw a conclusion from this in that the victim, her family and friends were also Hispanic.

Most importantly, the trial court acted within its proper bounds and the facts do not indicate an unrebutted presumption that there was private communication, contact or tampering with jurors which was prejudicial to Rodriguez, and there was no breach of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made.

Finally, it should be noted that nowhere does petitioner ask for an evidentiary hearing here on the issue of possible juror tampering. While his failure to request an evidentiary hearing is not dispositive of the question addressed above, it is the opinion of this court that the facts of this case, as

set forth in the record, would not merit the holding of an evidentiary hearing nor taking the extraordinary action of a federal district court ordering the reconvening of the state trial court's jury. *Cf., Tobias v. Smith,* 468 F.Supp. 1287 (W.D.N.Y.1979).

Accordingly, there being no merit to petitioner's claim, the application for writ of habeas corpus is hereby DENIED, petition DISMISSED.