**James B. SHILLCUTT, Plaintiff,**

v.

**John R. GAGNON, Respondent.**

**No. 84–C–1024.**

United States District Court,
E.D. Wisconsin.

Feb. 20, 1985.

Mark Lukoff, Wis. Public Defender, Milwaukee, Wis., for plaintiff.

Bronson C. La Follette, Atty. Gen. of Wis., Madison, Wis., for respondent.

DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. He alleges that his constitutional right to a fair and impartial jury was violated when one of the jurors made a racially prejudiced remark during the jury's deliberations. Since the record includes thorough briefs on the issue in controversy, no evidentiary hearing is necessary. The petition will be denied.

The petitioner was convicted by a jury of soliciting prostitutes and keeping a place of prostitution. After trial, the petitioner filed a motion for a new trial based on a juror's affidavit that another juror had stated during the jury's deliberations: "Let's be logical, he's a black, and he sees a seventeen year old white girl—I know the type."

The racial slur in the case at bar was made by a juror during deliberations. This is a very different circumstance from a remark made in the presence of the jury during trial. Because it was made by a juror during deliberations, however, the remark is protected from disclosure by Rule 606(b), Federal Rules of Evidence, which provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Although enacted into the federal rules of evidence only in 1975, the rule has been part of the common law since Lord Mansfield's decision in *Vaise v. Delaval*, 1 T.R. 11, 99 Eng.Rep. 944 (K.B.1785). *See Ford Motor Credit Co. v. Amodt*, 29 Wis.2d 441, 139 N.W.2d 6 (1966). Barring the testimony of jurors concerning possible misconduct on the part of their fellow jurors during deliberations will occasionally result in unfairness to individuals. Rule 606(b) represents a judgment that exposure of the deliberative process would cause an even greater injustice by removing protections vital to the effective functioning of the jury system, thereby infringing everyone's constitutional right to trial by jury. The need for the rule was acknowledged by the Supreme Court in *McDonald v. Pless*, 238 U.S. 264, 267–68, 35 S.Ct. 783, 784–85, 59 L.Ed. 1300 (1915):

If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

The rule has prevented challenges to verdicts where damages were awarded by the quotient method, *McDonald v. Pless, Id.* Where all jurors agreed to be bound by a majority vote, *Jorgensen v. York Ice Machinery*, 160 F.2d 432 (2d Cir.1947). Where jurors thought the plaintiff had sued the wrong party, *Rotondo v. Isthmian*, 243 F.2d 581 (2d Cir.1957), *cert. denied* 355 U.S. 834, 78 S.Ct. 53, 2 L.Ed.2d 45 (1957). Where the jurors speculated about the effects of income taxes and attorney's fees on their verdict, *Gault v. Poor Sisters*, 375 F.2d 539, 550 (6th Cir.1967). Where jurors misunderstood or disobeyed the court's instructions, *United States v. D'Angelo*, 598 F.2d 1002, 1003 (5th Cir.

1979). *Accord, United States v. Neary,* 552 F.2d 1184, 1190 (7th Cir.1977); *Domeracki v. Humble Oil,* 443 F.2d 1245 (3d Cir.1971), *cert. denied* 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971).

■ The rule also applies where a litigant seeks to impeach a verdict by introducing evidence that a jury exhibited prejudice toward a party during deliberations. In *United States v. Duzac,* 622 F.2d 911 (5th Cir.1980), the court of appeals for the fifth circuit upheld the trial court's refusal to declare a mistrial after receiving a note from the jury stating that deliberations were stalled because of "certain prejudices among this jury due to prior personal experiences." The rule has also barred testimony regarding a juror's remark that the defendant belonged to a criminal syndicate, *Young v. United States,* 163 F.2d 187 (10th Cir.1947), and a juror's comment that "They ought to hang him now, so that we can go home." *United States v. Kimberlin,* 527 F.Supp. 1010 (S.D.Ind.1981), aff'd 673 F.2d 1335 (7th Cir.1981).

■ Remarks made by jurors during deliberations which reveal racial prejudice are also inadmissible. In *Martinez v. Food City,* 658 F.2d 369 (5th Cir.1981), the court of appeals for the fifth circuit held that a juror's statement during deliberations that the defendant "should be taught a lesson" for hiring legal Mexican aliens was barred by Rule 606. In *Smith v. Brewer,* 444 F.Supp. 482 (S.D.Ia.1978), aff'd 577 F.2d 466 (8th Cir.), *cert. denied* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978), a black defendant had been found guilty of murder. The district court held that Rule 606 prevented a juror from testifying that during deliberations another juror

> "... got up and walked about the room in a kind of a ... strutting way such as a minstrel used to do and mimics [sic], used the black dialect to repeat some things [the defendant's black lawyer] said ... when he laid down on the table, he used the black mimic like 'you all' and that and this and, you know...."

444 F.Supp. at 485.

Impeachment of jury verdicts on the ground that a juror has expressed racial or other bias would defeat the important interests of free and open jury deliberations and the finality of judgments. Jurors would be inhibited during deliberations by the knowledge that their statements might be disclosed to the public by a fellow juror. The exposure of statements made during deliberations would be commonplace since, if courts were to recognize a party's right to prejudice-free deliberations, the law would also have to allow all parties an equal opportunity to vindicate the right. Restrictions on attorney-juror contact imposed by this and other district courts would presumably be improper. Rule 8.06, Local Rules for the Eastern District of Wisconsin. The potential for mischief in such a system is obvious.

Impeachment of jury verdicts on the basis of prejudicial remarks would seriously undermine the finality of the verdicts and the public's respect for them. Where deliberations are lengthy, counsel would frequently succeed in finding an arguably prejudiced remark by a juror, perhaps made in the heat of debate and taken out of context. The "verdict impeachment hearing" would become a new phase of our already procedure-laden system of justice.

■ The holding of *Tobias v. Smith,* 468 F.Supp. 1287 (W.D.N.Y.1979), that a juror's prejudiced remarks come within Rule 606(b)'s exception permitting testimony on the issue "whether extraneous prejudicial information was improperly brought to the jury's attention" is unconvincing. Case law indicates that "extraneous prejudicial information" means information specific to the case which originates outside the jury room, such as knowledge acquired about the defendant before trial, *United States v. Blair,* 444 F.Supp. 1273 (D.D.C.1978); knowledge acquired from the news media, *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); from unauthorized viewings of a site, *United States ex rel. DeLucia v. McMann,* 373 F.2d 759 (2d Cir.1967); from documents not in evidence, *United States v. Vasquez,* 597 F.2d

192 (9th Cir.1979); or from contacts with parties, *Leger v. Westinghouse*, 483 F.2d 428 (5th Cir.1973). *See also* cases at 3 Weinstein's Evidence ¶ 606[4], 606–30 –606–32.

The juror's alleged remark in the case at bar was not "extraneous" nor was it "information." It was an expression of a racial stereotype. As Judge Hand observed in *Jorgensen v. York Ice*, 160 F.2d 432, 435 (2d Cir.1947), the defects in the jury's verdict which the petitioner cites are intrinsic to a system which uses lay jurors and cannot be eliminated without eliminating the system itself:

> [I]t would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove. Like much else in human affairs, its defects are so deeply enmeshed in the system that wholly to disentangle them would quite kill it.

The jury system is based on the belief that a juror will consider each case solely on the merits. Rule 606(b) rejects the remedy proposed by the petitioner in cases where a juror has strayed from this ideal. In order to preserve the jury system, the technique proposed by the petitioner must be rejected in favor of systematic safeguards against prejudice such as voir dire, the juror's oath, and the court's instruction which directs the jury to consider only the evidence and to reject arguments based on prejudice. While not infallible, these checks minimize prejudice without undermining the integrity of the jury system.

Therefore, IT IS ORDERED that the petition for habeas corpus be and hereby is denied.