James B. SHILLCUTT,
Petitioner-Appellant,

v.

John R. GAGNON,
Respondent-Appellee.

No. 85–1432.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1986.

Decided Aug. 27, 1987.

Jeanne L. Nowaczewski, Chicago, Ill., for petitioner-appellant.

David J. Becker, Asst. Atty. Gen., Bronson C. LaFollette, Atty. Gen., Office of the Atty. Gen., Madison, Wis., for respondent-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

We are asked to decide whether a racial comment uttered by a juror during jury deliberations violates a criminal defendant's constitutional right to an impartial jury. Because, under the facts of this case, we hold that the rule prohibiting impeachment of verdicts sufficiently protects the petitioner's constitutional right, we affirm the district court's denial of the petition for habeas corpus. 602 F.Supp. 1280.

## I.

The state of Wisconsin charged Shillcutt, a black male, with soliciting prostitutes and keeping a place of prostitution in violation of Wisconsin law. The state's chief witness was a young white woman who testified that she gave Shillcutt her earnings from prostitution, and Shillcutt paid for her housing, food and drugs. At trial, the jury remained deadlocked after nearly six hours of deliberation, prompting the trial judge to further charge the jurors. Shortly afterward, the jury announced a guilty verdict. In the wake of the trial, one juror affiant revealed that during the final deliberations a white male juror had said: "Let's be logical. He's black and he sees a seventeen year old white girl—I know the type." Armed with this affidavit, Shillcutt moved for a new trial. After conducting a hearing, the trial court found the affidavit to be credible but denied the motion and imposed sentence. The Wisconsin Court of Appeals affirmed the judgment of conviction on the basis that the statement made during jury deliberations was not competent evidence under state law. A divided Supreme Court of Wisconsin affirmed. The federal district court denied Shillcutt's habeas corpus petition and Shillcutt now appeals that decision.

Shillcutt presents a number of issues for review, some for the first time. Shillcutt argues the racial comment made during jury deliberations violated his sixth amendment right to an impartial jury; the instruction given to the deadlocked jury denied him sixth and fourteenth amendment rights to a fair trial and due process; the tainted voir dire rendered the jury verdict a nullity; and the "totality of circumstances" constitutes a violation of his sixth and fourteenth amendment rights.

## II.

Every criminal defendant in the state of Wisconsin is guaranteed the right to an impartial jury, Wis. Const. art. I, §§ 5, 7; U.S. Const. amends. VI, XIV, and the prejudice of even one juror jeopardizes fulfillment of the right. *United States v. Booker*, 480 F.2d 1310, 1311 (7th Cir.1973). In alternative fashion, Shillcutt contends that the racial comment is "presumptively prejudicial," the fact the statement was made "undeniably establishes" that he was denied the right to an impartial jury, and recent pronouncements of the United States Supreme Court require this Court to do whatever is necessary to weed out juror prejudice. *See, e.g., Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Turner v. Murray*, 476 U.S. 1, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986).

According to the affidavit submitted after trial, one juror encouraged the others to be "logical" and to take notice that Shillcutt was black and the girl was white. Another juror responded by saying Shillcutt "wasn't capable of loving anybody." These comments were made only a short time before a formerly deadlocked jury submitted a guilty verdict. Shillcutt contends the statement was a racial slur which

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

infected the jury process, violating his constitutional right to an impartial jury.

In denying the motion for new trial, the trial court stated: "[A]lthough [the statement] could be categorized as a racial slur, the court does not find by clear, satisfying evidence convincing proof that this information would be prejudicial to a hypothetical jury." Hearing Transcript at 16. Whether the statement was prejudicial made no matter to the Wisconsin Court of Appeals; it concluded a juror was not competent to testify about such a statement under § 906.06(2) of the Wisconsin statutes and, therefore, any additional inquiry into prejudicial effect was foreclosed. *State v. Shillcutt*, 116 Wis.2d 227, 231, 341 N.W.2d 716, 717 (Wis.App.1983). The Supreme Court of Wisconsin affirmed the appellate court's holding, *State v. Shillcutt*, 119 Wis.2d 788, 350 N.W.2d 686 (1984).

Wisconsin statute § 906.06(2) reads:
INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

This statute, like its counterpart in Federal Rule of Evidence 606(b),[1] is essentially an accommodation between the policies that conflict when a juror affidavit concerning juror misconduct is used as the basis of a motion for new trial. "[T]he court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room." *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915). The general rule of incompetence has limited exceptions for juror testimony "on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Thus, the competency of the juror's testimony hinges on whether it may be characterized as "extraneous information" or as an "outside influence." The Wisconsin courts ruled it may not. As a result, the general rule of incompetence was enforced despite Shillcutt's claim that application of § 906.06(2) fails to weed out juror prejudice and therefore denies him the constitutional right to an impartial jury.

■ Wisconsin courts apply a three-part test to the issue of verdict impeachment. The evidence brought to the trial court's attention must be examined to determine if it (1) is competent; (2) shows sufficient substantive grounds to overturn the verdict; and (3) shows resulting prejudice. *State v. Poh*, 116 Wis.2d 510, 515–16, 343 N.W.2d 108, 112 (1984); *After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis.2d 734, 738, 324 N.W.2d 686, 689 (1982). Competency of evidence is governed by § 906.06(2). According to the state appellate court, "[w]hen a state statute is modeled after a federal rule, [it] look[s] to the federal interpretation of the rule for guidance." *State v. Shillcutt*, 116

---

1. Federal Rule of Evidence 606(b):

 *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Wis.2d at 232, 341 N.W.2d at 718. On the basis of law under both the state and federal rules, the Wisconsin courts found that the juror testimony was not competent. There was no need, consequently, to consider the remaining two elements for verdict impeachment.

 We are mindful of our limited role on this appeal. A federal court in habeas corpus proceedings may "not take the extraordinarily intrusive action of setting aside a state criminal conviction in the guise of due process review, simply because [it] disagree[s] with the state court's interpretation of state law." *United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 671 (7th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). Federal habeas review should consider only violations of the Constitution, laws or treaties of the United States. *United States ex rel. Little v. Twomey,* 477 F.2d 767, 770 (7th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973). We would not entertain an argument urging us to find that the Supreme Court of Wisconsin misconstrued state laws or rules of evidence. Rather, the proper role of the federal courts is to inquire whether the state court determination violated any federal constitutional or statutory right of the petitioner.

 In this habeas suit, the federal district court held that under Federal Rule of Evidence 606(b) the jury verdict must not be impeached for the purpose of disclosing the allegedly prejudicial statement. *Shillcutt v. Gagnon,* 602 F.Supp. 1280 (E.D. Wis.1985). This decision finds ample support in the cases of other jurisdictions. In *Smith v. Brewer,* 444 F.Supp. 482 (S.D. Iowa), *aff'd,* 577 F.2d 466 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978), where a juror allegedly mimicked the black defendant's manner of speaking with comments such as "you all," the Eighth Circuit agreed that evidence of the juror's antics should be inadmissible. In *Martinez v. Food City, Inc.,* 658 F.2d 369 (5th Cir.1981), the Fifth Circuit held that one juror's view that the defendant "should be taught a lesson" was part of the subjective deliberation process of the jury and, therefore, not competent evidence. Another Fifth Circuit case, *United States v. Duzac,* 622 F.2d 911 (5th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980), stands for the view that testimony concerning jurors' prejudices is incompetent. "The proper time to discover such prejudices is when the jury is being selected and peremptory challenges are available to the attorneys." 622 F.2d at 913. The Supreme Court of South Dakota reached a similar result in holding that evidence of coercion of one juror by other jurors does not constitute "outside influence" and thus is incompetent evidence under South Dakota law. *State v. Finney,* 337 N.W.2d 167 (S.D.1983). Although the decision in *Tobias v. Smith,* 468 F.Supp. 1287 (W.D.N.Y.1979) (order new trial where "probability of prejudice") is a troubling exception, the weight of authority follows the lead of the Third Circuit: "[E]vidence of discussions among jurors, intimidation or harassment of one juror by another, and other intrajury influences on the verdict is within the rule, rather than the exception, and is not competent evidence to impeach a verdict." *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 150 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976).

The adoption of Federal Rule of Evidence 606(b) was not without controversy or debate among the Advisory Committee, the United States Supreme Court and Congress. *See Tanner v. United States,* —— U.S. ——, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), for a full review. But as adopted, Rule 606(b) reflects a deliberate choice to exclude post-verdict juror testimony, with only few exceptions. H.R.Conf.Rep. No. 93–1597, 93d Cong., 2d Sess. (1974), U.S. Code Cong. & Admin.News 7051. As the Supreme Court of Wisconsin has acknowledged, the rule of exclusion fosters important public policies, including discouraging post-verdict harassment of jurors; encouraging open discussion among jurors; reducing incentives for jury tampering; promoting verdict finality; and maintaining the jury as a viable decision-making body. *Shillcutt,* 350 N.W.2d at 689. Just recently, the United States Supreme Court has emphasized the importance of these objec-

tives. *Tanner,* —— U.S. at ——, 107 S.Ct. at 2747–49. A fruitful exchange of ideas and impressions among jurors is thought to hinge heavily on some assurance that what is said in the jury room will not reach a larger audience. This exchange, however crude or learned, is important enough to preserve.

> Jurors are expected to bring commonly known facts and their experiences to bear in arriving at their verdict. 'We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system.'

*Poh,* 343 N.W.2d at 113 (quoting *United States v. McKinney,* 429 F.2d 1019, 1022–23 (5th Cir.1970)). We must conclude the intent of Rule 606(b) is to preclude the kind of evidence Shillcutt urges the Court to consider.

 The rule of juror incompetency cannot be applied in such an unfair manner as to deny due process. Thus, further review may be necessary in the occasional case in order to discover the extremely rare abuse that could exist even after the court has applied the rule and determined the evidence incompetent. In short, although our scope of review is narrow at this stage, we must consider whether prejudice pervaded the jury room, whether there is a substantial probability that the alleged racial slur made a difference in the outcome of the trial.

Aside from the alleged racial slur, this case had little to distinguish it from many other cases. It required the jury to make a basic credibility choice between Mr. Shillcutt and the young girl, Ms. Plante. The prosecution introduced evidence of prior crimes, including felony convictions, to attack the defendant's credibility as well as to establish the "background relationship" (i.e., prior working relationship) between Shillcutt and Plante. The trial judge issued the proper cautionary instructions in admitting the evidence of prior crimes and the Wisconsin Court of Appeals held it was not an abuse of discretion to admit such evidence.

The jury rendered a guilty verdict after nearly six hours of deliberation. Shillcutt's attorney filed a post-trial motion, in part to request impeachment of the verdict, and the request was supported by a juror's affidavit. The court subpoenaed the juror (Mrs. Curran) for the purpose of a hearing. Mrs. Curran declared that (1) during final deliberations a male juror said, "Let's be logical; he's a black, and he sees a seventeen year old white girl—I know the type;" (2) a female juror then remarked, "A man like that isn't capable of loving anybody;" (3) the statements were made about 15 to 20 minutes before the end of deliberations; and (4) no other racial statements were made.

The Supreme Court of Wisconsin stated that "the evidence does not warrant a conclusion that the conviction must be reversed as a matter of fundamental fairness guaranteed by the due process clause." 350 N.W.2d at 695. The conclusion followed on the heels of an examination of the prejudice likely to result:

> It is apparent that the racially referenced statement concerned only a very small part of the jury's deliberation. The statement was made fifteen to twenty minutes before the end of a six hour deliberation. The juror who supplied the affidavit testified that she did not recall that any other references to race were made during the deliberation.

350 N.W.2d at 695.

Finding no "obvious default of justice" or no "substantial likelihood" of prejudice, the Supreme Court of Wisconsin concluded reversal was not required as a matter of fundamental fairness. *Id.*

We are in virtual agreement with the Wisconsin court. In the context of the trial as a whole, we are unable to say that there is a substantial likelihood that a racial slur, if it occurred, would have prejudiced Shillcutt. In fact, even if we could take a close-up view, still we would know little of what prompted such a comment, or whether it was typical of the observations made by jurors. Mrs. Curran said no other racial comments were made. The jury deliberated at least five hours prior to the time the

comment was allegedly made, and there is nothing to suggest that in the final twenty minutes of deliberation the comment influenced or had any impact on the verdict. The scene juror Curran describes appears entirely unrelated to any discussion of the facts of the case by the jury. Moreover, the remark of another juror that Shillcutt "wasn't capable of loving anybody," even if accepted as having occurred, is patently non-racial and not clearly responsive to anything the male juror may have said. In any event, because we cannot say that there is a substantial likelihood that the alleged racial slur would have made a difference in the outcome of the trial, we conclude that applying the no-impeachment rule does not offend fundamental fairness.

### III.

■ Shillcutt contends the instructions given to the deadlocked jury, an "Allen charge" (*see Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)), violated his sixth and fourteenth amendment rights to a fair trial and due process. He argues that such an instruction may be given only when the precise instruction has been given prior to the time the jury has retired, and that, in any event, the instruction must reemphasize the jury's duty not to surrender honest convictions as to the weight or effect of the evidence.

After the jury had deliberated more than five hours, the trial court recalled the jury and, over defense counsel's objection, instructed the jurors:

I see no reason why you jurors are not as competent, are not as able, nor as likely to decide the disputed issues of fact in this case and decide them right, as the next jury that would be called to determine such issues. I do not want you to understand by what I say that you are going to be made to agree, or that you are going to be kept out until you do agree. I do want you to understand that it is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be open minded; they should listen to the arguments of others, and talk matters over freely and fairly, and make an honest effort as fair-minded men and

women, to come to a conclusion on all of the issues presented to them.

Petitioner Appx. at 19.

After about an hour of further deliberation, the jury returned with a verdict of guilty on both counts.

A line of cases decided by this Court give direction on resolving the Allen charge issue, *see United States v. Thibodeaux,* 758 F.2d 199 (7th Cir.1985); *United States v. Hamann,* 688 F.2d 507 (7th Cir.1982), *cert. denied,* 460 U.S. 1013, 103 S.Ct. 1255, 75 L.Ed.2d 483 (1983); *United States v. Gabriel,* 597 F.2d 95 (7th Cir.), *cert. denied,* 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979). But *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), holds that the exhaustion requirement of 28 U.S.C. § 2254(b), (c) precludes a federal court from considering a state prisoner's habeas corpus petition when the petition contains claims that have not been exhausted in the state courts. Shillcutt never raised the Allen charge issue before the Wisconsin appellate courts and it appears that he still has such an avenue for constitutional claims. Wis.Stat. § 974.06. In fact, the Allen charge argument was not raised below in the original habeas petition. As a result, rather than dismiss the *entire* petition (because it includes unexhausted claims), we construe the Allen charge argument to be a belated one which was not included in the original petition, and which we therefore will not consider on this appeal. Shillcutt's argument concerning an improper voir dire is similarly foreclosed.

Having considered and disposed of Shillcutt's arguments, we also conclude there is no merit to the claim of an unfair trial under the totality of circumstances. For the reasons set forth above, the district court's denial of the petition for a writ of habeas corpus is affirmed.

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. However, I reach this result by a somewhat different route than does the majority.

This case was before the district court pursuant to 28 U.S.C. § 2254. In such a proceeding, as the majority points out, the federal court's task is a limited one. Unless the record in the state court is inadequate, *see* 28 U.S.C. § 2254(d), the federal court must examine the state court record to determine whether the petitioner was denied a right protected by the Constitution.

Here, the petitioner alleged that he was denied a federally-protected right to a fair trial because a juror made a racially-prejudiced remark during the jury deliberations. The district court did not hold a hearing but proceeded to resolve the issue on the basis of the state court record. That record shows that the state court did not reach the merits of the petitioner's contention. Rather, it declined to pass on the issue because Wisconsin has an evidentiary rule—employed widely in American jurisdictions—that prevents impeachment of the jury verdict by reference to conversations taking place during the jury deliberations. The sole question before the district court, in my view, is whether Wisconsin's disposition of this contention, through the use of its evidentiary rule, violated a federally-protected right. As this court holds, the application of the rule violates no such right.

In my view, there is no necessity for the court to rely on Rule 606(b) of the Federal Rules of Evidence to reach this conclusion. While the Federal Rules of Evidence are generally applicable to proceedings under 28 U.S.C. § 2254, *see* Fed.R.Evid. 1101(e), there is simply no reason to invoke them in a situation where the district court receives no new information but simply makes its determination on the basis of the state record. In this case, the court's methodology makes no difference in terms of result because Rule 606(b) is the same as the Wisconsin rule. However, in other cases, the court's methodology could seriously distort the scope of 28 U.S.C. § 2254, a result not intended by the Congress in approving the Federal Rules of Evidence. Those rules do not give the district court the right to "blue-pencil" the state record and to consider only those portions which conform to the federal rules.