**STATE OF WISCONSIN, ex rel. Eddie B. ROBINSON, Petitioner**

v.

**Dan BUCHLER, Superintendent, Racine Correctional Institution, and James E. Doyle, Attorney General, State of Wisconsin, Respondents.**

No. 93–C–1453.

United States District Court, E.D. Wisconsin.

July 26, 1996.

**592**

Waring R. Fincke, Fincke Law Office, West Bend, WI, for petitioner.

Daniel J. O'Brien, Assistant Attorney General Madison, WI, for respondents.

## DECISION AND ORDER

CURRAN, District Judge.

Eddie B. Robinson, a prisoner in state custody, has filed a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. At the time he filed his petition, Robinson was in the custody of Dan Buchler, Superintendent of the Racine Correctional Institution. Robinson is serving a life term of imprisonment after being convicted in the Circuit Court of Kenosha County (Wisconsin) of first degree intentional homicide while using a dangerous weapon in violation of Sections 940.01(1), 939.05, 939.63(1)(a)(2) & 939.63(1)(c) of the Wisconsin Statutes. The sole ground for relief raised by Robinson is that his trial and appellate counsel was ineffective because he failed to move for a severance of Robinson's trial from that of his codefendant who presented an "antagonistic defense."

The Respondent has answered and has submitted copies of transcripts of the proceedings in the state courts. The parties have completed briefing of the issues raised. This court, which is located in the district where Robinson was convicted, is empowered to consider the petition under 28 U.S.C. § 2254.

## I. FACTS AND PRIOR STATE PROCEEDINGS

Robinson has not requested an evidentiary hearing and it appears that none of the parties dispute the facts set forth by the Wisconsin Court of Appeals. That court recounted the prior history and facts of the case as follows:

> This matter arose out of the shooting death of Dorsey Carr outside of a Kenosha tavern on October 10, 1984. Robinson was charged as the principal perpetrator of the shooting and a codefendant, Jimmie Campbell, was charged as party to the crime. In February of 1985, Robinson and Campbell were tried jointly. The jury convicted Robinson but acquitted Campbell.

*State v. Robinson,* 177 Wis.2d 46, 49, 501 N.W.2d 831, 833, *rev. denied,* 505 N.W.2d 140 (Wis.1993).

> The state relied primarily on the testimony of Lorraine Gardner, an eyewitness to the shooting, and expert scientific witnesses in its principal case against Robinson and Campbell. Gardner testified that she was with Carr outside of the tavern when they encountered Robinson, Campbell and others. Gardner claimed that she saw Campbell pass a gun to Robinson, who then stepped back six to eight feet and fired a shot at Carr. However, the state's pathologist testified that the gun was fired at close range, no further than a foot away, and could have been touching Carr's pants when fired. Robinson's defense was premised on discrediting Gardner, the only eyewitness called by the state, by using the state's expert witnesses to establish that Robinson could not have fired the fatal

shot based on where Gardner said he was standing.

A more detailed account of the incident was provided by witnesses called for Campbell's defense by his attorney, Geoffrey Dowse. Johnnie Steel testified that he observed Campbell and others whom he could not identify wrestling with the victim in an attempt to take away a sawed-off shotgun which Carr had been carrying. Steel also testified that he saw Robinson standing in the street near a parked car with a shotgun and saw him shoot Carr during the struggle over Carr's gun. However, according to Steel, Robinson was seven to ten feet away from Carr at the time he allegedly fired the shot. Steel further claimed that he overheard Campbell say to Robinson, "You done shot him, get out of here."

Dowse also called Johnnie Freeman, another eyewitness, who did not see the shooting but testified that he saw Robinson at the tavern with a sawed-off shotgun and heard shots approximately fifteen minutes later from what he believed to be a .12 gauge shotgun. Dowse [1] then called a firearms expert who corroborated the state's expert witness, testifying that the victim was shot with a .20 gauge shotgun at or near contact with the victim, not six to eight feet away.

*Robinson,* 177 Wis.2d at 53–54, 501 N.W.2d at 834–35.

[After being convicted,] Robinson brought a postconviction motion for a new trial prior to sentencing on the grounds that new exculpatory evidence was discovered from statements Campbell had given to investigators after the trial. Campbell was unavailable as a witness during the trial because he exercised his constitutional right under the fifth amendment not to testify. Robinson asserted that as a result of Campbell's unavailability to testify, he was substantially prejudiced and denied the right to a fair trial. On April 2, 1985, the trial court denied Robinson's motion. The court sentenced Robinson to life imprisonment plus ten years, consecutive.

No direct appeal was taken from the judgment of conviction.

On March 17, 1986, Robinson filed a postconviction motion for relief pursuant to sec. 974.06, Stats., alleging prosecutorial misconduct. Robinson claimed that the state deliberately charged and tried he and Campbell jointly in order to deny his constitutional rights to present a defense, to confront his accusers, and to a fair trial. The trial court denied this motion, concluding that the essence of the allegations was already considered and denied on April 2, 1985 and that the appropriate remedy was an appeal from that order, not a sec. 974.06, Stats. motion.

On June 30, 1992, Robinson, through new counsel, filed a second postconviction motion under sec. 974.06, Stats. Robinson alleged that his trial counsel and first appellate counsel, Myron Keyes, provided ineffective assistance of counsel by failing to request a severance of the defendants. The state objected to the motion on the basis that Robinson's postconviction motion was barred by sec. 974.06(4), which generally requires a prisoner to raise all questions available to him in one motion. *See State ex rel. Dismuke v. Kolb,* 149 Wis.2d 270, 273, 441 N.W.2d 253, 254 (Ct. App.1989). On September 1, 1992, the trial court, bypassing the state's procedural objection, decided the motion on the merits and entered an order dated September 14, 1992 denying postconviction relief.

*Robinson,* 177 Wis.2d at 49–51, 501 N.W.2d at 833 (footnote omitted).

When Robinson's second postconviction motion reached the Wisconsin Court of Appeals, that court ruled that his second petition should be heard despite Robinson's failure to raise his ineffectiveness of counsel issue in his first petition. The court explained that:

We hold that in circumstances where a defendant is represented by the same counsel both at trial and on appeal, the inability of the defendant's trial counsel to assert his own ineffectiveness constitutes a "sufficient reason" under sec. 974.06(4),

---

**1.** The transcript reveals that it was actually Robinson's attorney, Myron Keyes, who called the firearms expert. *See* Answer to Petition for Writ of Habeas Corpus at Exhibit H, pp. 337–375.

Stats., for not asserting the matter in the original sec. 974.06 motion. Accordingly, we conclude that Robinson's successive sec. 974.06 motion alleging ineffective assistance of counsel is appropriate.

*Robinson,* 177 Wis.2d at 53, 501 N.W.2d at 834 (footnote omitted).

Turning to the merits of Robinson's motion, the Wisconsin Court of Appeals employed the standard for ineffectiveness of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to conclude that Robinson's trial attorney had exercised reasonable professional judgment in not requesting severance based on all the circumstances before him at the time of trial and that, therefore, Robinson was not denied the right to effective assistance of counsel. *See Robinson,* 177 Wis.2d at 58, 501 N.W.2d at 836. Robinson's petition to the Wisconsin Supreme Court to review this decision was denied. *See Id.* at 505 N.W.2d 140 (Wis.1993).

## II. *POSITIONS OF THE PARTIES*

After his state court appeals proved unavailing, Robinson filed his petition for federal habeas corpus relief, in which he mounts the following argument:

In the instant matter, the defenses presented by Robinson and Campbell were classically antagonistic. It was Keyes' theory that Gardner's testimony that Robinson fired the fatal shot was incredible when compared with the testimony of the State's pathologist and ballistics expert. According to the expert testimony, Robinson could not have been standing where Gardner testified he was standing when the fatal shot was fired. This was a compelling argument, as it pitted the state's *only* eyewitness against the state's own experts. Keyes' presentation, standing alone against the evidence presented by the State, was clearly sufficient to establish a reasonable doubt as to Robinson's guilt.

Unfortunately, Keyes forgot about the case being put in by Dowse on Campbell's behalf. Dowse produced the other eyewitnesses who both contradicted Gardner and established that Robinson inflicted the fa-

tal wound in a manner consistent with the testimony of the State's experts. Dowse's witnesses established that Campbell was not involved in Carr's death and led to Campbell's acquittal. It was this acquittal of Campbell which foreclosed Robinson's defense and led to his conviction. In order to secure the acquittal, the jury had to believe Freeman and Steel and not Gardner. If the jury believed Freeman and Steel, both the State and Dowse argued that Robinson was guilty. The only way for Robinson to be acquitted was for the jury to believe the two gun theory advanced by Keyes which enjoyed no support from any of the citizen witnesses.

Had Keyes requested a mistrial and a severance when Dowse's strategy, and the concomitant prejudice to Robinson, became apparent, the trial court would have been compelled to grant the request. Keyes' failure to do so was well outside the professional norms governing these matters and was clearly deficient performance. The prejudice to Robinson is patent. He should not have been forced to meet the double burden of the attack of both the prosecutor and Dowse at this joint trial.

The trial court's conclusion that the same evidence would have been admissible at a severed trial for Robinson misses the point. At such a severed trial, Robinson would not have faced two adversaries working together to convince the jury of his guilt. He would not have had Dowse making arguments about his flight and demanding the jury to infer his guilt. The prosecutor would have still been forced to put on contradictory evidence in order to bring all of this evidence to bear against him.

It must be remembered that the focus here is whether Robinson received a fair trial, not would a new trial necessarily have a different result. The result here was unreliable because of the dual attacks Robinson had to meet at this trial. The prosecutor urged Robinson's and Campbell's guilt on one theory, supported by Gardner's testimony. Dowse urged his client's innocence on a theory which called upon the jury to accept Steel, Freeman

and the rest of his case instead of Gardner. In accepting this version of events in order to acquit Campbell, the jury had no choice, from both Dowse and the State's points of view, but to find Robinson guilty. This trial, as it unfolded was unfair to Robinson. He must be given a new trial free of this dual prosecution.

Memorandum in Support of Petition for Writ of Habeas Corpus at 23–24.

The Respondent, in turn, maintains that the state would have called witnesses Johnny Steel and Johnnie Freeman to testify against the petitioner in a severed trial. Therefore, Robinson's counsel made a reasonable strategic decision to proceed with a joint trial and to attempt to establish through testimony of the occurrence witnesses and the experts that Robinson was too far away from the victim to have fired the fatal shot. The Respondent goes on to argue that, even if the Petitioner met his burden of proving deficient performance, he has failed to meet his burden of proving that his trial was fundamentally unfair and that there was a reasonable probability of a different result had trial counsel moved to sever his trial from that of Jimmie Campbell. According to the Respondent, the trial judge would not have granted severance because the codefendants' defenses were not mutually antagonistic. The Respondent argues that the allegedly conflicting testimony of Campbell's witnesses was merely cumulative to the evidence of guilt presented by the state's witnesses. And, even if severance had been granted, the same witnesses would have testified at both trials, and Robinson would have still been convicted.

In reply, Robinson continues to maintain that his trial was fundamentally unfair because he was subjected to a dual attack by his codefendant and the state.

## III. *PREREQUISITES TO RELIEF AND STANDARDS OF REVIEW*

The sole issue raised by Robinson's petition is whether his trial counsel was ineffective for failing to request a severance of his trial from that of his codefendant. The Respondent concedes that Robinson has exhausted his state court remedies as to this issue and, based upon the record of the state proceedings, the court finds that the Petitioner has met his burden of demonstrating that he has fulfilled the prerequisites for relief, including fairly presenting the substance of his federal claim to the state courts. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

 The ultimate determination of whether Robinson's trial counsel was ineffective is a mixed question of law and fact which involves the application of legal principles to historical facts. *See United States ex rel. Scarpelli v. George,* 687 F.2d 1012, 1015 (7th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). According to Section 104 of the Antiterrorism and Effective Death Penalty Act of 1996, federal courts hearing state habeas corpus petitions must accord a presumption of correctness to state court findings of basic, primary or historical facts and to subsidiary facts underlying ultimate conclusions. This rule applies equally to findings of trial courts and appellate courts. *See Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981) (per curiam). It applies as well to the inferences that can be deduced from the facts. *See Marshall v. Lonberger,* 459 U.S. 422, 435, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). However, the legal conclusions drawn by state courts from the historical facts on the federal constitutional question raised are subject to independent review. *See Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980).

 In the same fashion, mixed questions of law and fact are subject to independent federal review. *See United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1018 (7th Cir.1987); *Nash v. Israel,* 707 F.2d 298, 301 (7th Cir.1983). Where the question is mixed, the federal court may give a different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard. *See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982). Where, as here, the issue involves a federal constitutional right, federal law must be applied. *See Boykin v.*

*Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Federal habeas corpus review can cover only violations of the Constitution, laws, or treaties of the United States. *See Shillcutt v. Gagnon,* 827 F.2d 1155, 1158 (7th Cir.1987).

## IV. *DISCUSSION AND DECISION*

### A. LEGAL STANDARDS FOR EFFECTIVE ASSISTANCE

■ In determining whether Robinson was deprived of his right to effective assistance of counsel when his attorney failed to move for a severance, this court, like the state courts, must use the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), where the Supreme Court established a two-prong test for determining whether a counsel's omissions and errors have deprived a criminal defendant of his Sixth Amendment right to counsel. First, a petitioner must demonstrate that counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Review of this first prong contemplates deference to strategic decision-making and an evaluation of counsel's decisions from counsel's perspective at the time the decisions were made. *Id.* at 689–91, 104 S.Ct. at 2065–66. Consequently, courts engage in a strong presumption that counsel performed adequately.

■ The second prong of the test requires the petitioner to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This test, however, does not merely question whether the outcome would have been different, but also looks at whether the result was fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 369–70,

113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). The *Strickland* standard requires focus, not upon whether counsel could have done a better job, but upon whether counsel provided the assistance necessary to ensure the fundamental fairness of the proceeding whose result is being challenged. *See Resnover v. Pearson,* 965 F.2d 1453, 1460 (7th Cir.1992), *cert. denied,* 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993). A petitioner must succeed in making both showings in order to prevail—a standard which the Seventh Circuit describes as presenting so high a hurdle that "[i]ndeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland.*" *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987) (quoting *Matthew* 19:24).

### B. COUNSEL'S PERFORMANCE

Applying the *Strickland* standards to the facts of this case, the court concludes that the conduct of Myron Keyes, Robinson's trial attorney, was reasonable under the circumstances. Under the prosecutor's theory of the case, Robinson was the person who shot Dorsey Carr following a raucous birthday party for Carr which was marked by fighting, drinking and two visits from the police. Robinson's half-brother, Jimmie Campbell, was charged with being a party to the crime by handing a sawed-off shotgun to Robinson before the shooting. The only eyewitness to the shooting called by the prosecution was Lorraine Gardner who testified to this scenario. Gardner also testified that Robinson was several feet from Carr when he shot him.

Keyes called a forensic expert, Reginald Templin, who offered the expert opinion that Carr was mortally wounded with a .20 gauge shotgun and that the shooter could not have been farther than four inches from the victim when the shot was fired. Keyes' theory of defense was that this testimony exonerated his client who had been standing too far away, according to all the eyewitnesses. He suggested that Carr had been shot with his own gun during a struggle with other partygoers or by a third person who fled the scene.

Codefendant Campbell's attorney offered a number of expert and fact witnesses in what was ultimately a successful effort to prove that Campbell had not handed a gun to Robinson. Two of the witnesses (Johnny Steel and Johnnie Freeman) testified that they saw Robinson with a gun and Steel testified that he saw Robinson shoot Carr. Steel also testified that Robinson was standing several feet from Carr at all times. Neither witness *could remember seeing Campbell with a gun.*

During closing arguments, Campbell's attorney recounted this testimony and also pointed out that Campbell had remained at the scene and talked to the police, while Robinson had fled.[2] Robinson's present counsel maintains that Keyes should have moved for a severance during Campbell's defense case or at least during closing arguments. He calls their defenses "antagonistic."

█ Given these circumstances, plus the fact that the weapon used for the shooting was never found, this court believes that Keyes was within the bounds of rendering competent legal counsel in not moving for a severance of the codefendants' trials. Even if the jury believed that Campbell had not handed a weapon to Robinson, the jury was not compelled to convict Robinson. The jury could still have accepted Keyes' theory that Robinson was too far from Carr to have fired the fatal shot which the expert said came from point-blank range. Campbell's eyewitness Steel supported Keyes' theory that Robinson was never close enough to the victim. Campbell's witnesses also attempted to discredit the reliability of the testimony of Gardner who had identified Robinson as the person who shot Carr. This is not a case in which the jury had to decide whether one codefendant or the other was the shooter. No one was trying to blame Campbell for the actual shooting. And, although it was undeniably prejudicial to Robinson when Campbell's attorney pointed out that he had fled in contrast to his client who had remained on

the scene, the state had already elicited testimony concerning Robinson's arrest, so the effect was not unduly prejudicial, it was merely cumulative.

█ Even if Keyes had moved for severance, it is unlikely that the judge would have granted the motion late in the trial during Campbell's case or during closing arguments. "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). Under federal standards, the trial judge would not have been compelled to grant severance as a matter of law. The Seventh Circuit summarized the law in effect at the time of Robinson's trial as follows:

> There is a strong interest in joint trials of those who engaged in a common enterprise. *See United States v. Velasquez,* 772 F.2d 1348, 1352–54 (7th Cir.1985). Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome. *See United States v. Oxford,* 735 F.2d 276, 280 (7th Cir.1984). This is not to deny that a joint trial may create a risk that the jury will hear evidence that is inadmissible with respect to one defendant. Inconsistent defenses also may create prejudice. But as a rule evidence and arguments may be controlled by the court, and inconsistent defenses are not enough to require severance. *United States v. Joyce,* 499 F.2d 9, 21 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42

---

**2.** In ruling on the postconviction motions, the trial judge chided Keyes for not asking for a severance or a mistrial when Campbell's attorney mentioned Robinson's flight. Nevertheless, the judge did not state that he would have granted such a motion. He ultimately ruled that neither Campbell's witnesses nor his closing argument deprived Robinson of a fundamentally fair trial or produced an unjust result. *See* Answer to Petition for Writ of Habeas Corpus at Exhibit I, pp. 30–34.

L.Ed.2d 306 (1974); *United States v. Hutul,* 416 F.2d 607, 620–21 (7th Cir.1969), *cert. denied,* 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499 (1970). Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact. Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense *precludes* acquittal of other defendants, it is not necessary to hold separate trials. *See United States v. Hendrix,* 752 F.2d 1226, 1232 (7th Cir.) *cert. denied,* 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985); *United States v. Banks,* 687 F.2d 967, 973 (7th Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1208, 75 L.Ed.2d 448 (1983); *United States v. Ziperstein,* 601 F.2d 281, 285 (7th Cir. 1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); *United States v. George,* 477 F.2d 508, 515 (7th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973).

*United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). *See also generally Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

Under these standards, severance would not have been constitutionally mandated because the defenses of Robinson and Campbell· were not so inconsistent that the making of Campbell's defense led to an unjustifiable inference of Robinson's guilt. As explained above, the acceptance of Campbell's defense that he did not hand Robinson a shotgun did not preclude the acquittal of Robinson for shooting Carr. *See Zafiro,* 506 U.S. at 538–39, 113 S.Ct. at 937–38 (even mutually antagonistic defenses are not prejudicial *per se* ).

## C. TRIAL OUTCOME

■ Even if severance had been granted, it is unlikely that the outcome of Robinson's separate trial would have been different. The role of a federal court considering a habeas corpus petition is not to predict the hypothetical outcome of a future trial. *See Lawrence v. Armontrout,* 31 F.3d 662, 668 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1124, 130 L.Ed.2d 1087 (1995). Nevertheless, it appears inevitable that, if Robinson had been tried separately, the prosecution, without having to prove that Campbell aided in the homicide by providing the gun, would have presented the same eyewitnesses Campbell called. Robinson does not contend that the testimony of Freeman or Steel would be inadmissible if offered in the state's case in chief. Thus, it is not any less probable that Robinson would have been convicted at a separate trial.

Far from rendering the trial fundamentally unfair, the joint trial of Campbell and Robinson offered the jury a more complete picture of the events leading to the death of Dorsey Carr. The state called only one eyewitness—Lorraine Gardner—because her testimony could have convicted both defendants. Keyes called no fact witnesses, while Campbell called two other eyewitnesses whose versions of the night's events differed from Gardner's in that their testimony tended to exculpate Campbell. In the chaotic atmosphere of the shooting, it is not surprising that the testimony of the eyewitnesses was not identical. After the joint trial, the jury was able to assess which testimony was the most credible. And, although Campbell's attorney engaged in some finger-pointing directed at Robinson in his closing argument, it did not rise to a level where severance would have been mandated. Moreover, the jury was instructed to consider the evidence against each defendant separately. *See United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.) ("finger pointing is an acceptable cost of the joint trial"), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). The fact that Campbell was acquitted indicates that they followed this instruction. Under these circumstances, this court cannot conclude that the tactics and strategy of Robinson's counsel so upset the adversarial process between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *See Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986).

In sum, Robinson has not met his burden of persuading the court that his trial coun-

sel's performance was ineffective or that he suffered substantial prejudice because his attorney failed to move for severance. There is no reasonable probability that a separate trial would have resulted in Robinson's acquittal or that his representation was so deficient that it undermined the fundamental fairness of the trial. Consequently, his petition for habeas corpus relief will be denied.

### ORDER

For the reasons explained above, the court ORDERS that Eddie B. Robinson's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (filed December 23, 1993) IS DENIED upon its merits.

IT IS FURTHER ORDERED that this action is dismissed.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final order of dismissal as a separate document. This order shall provide that:

This action came on for a hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED

that Petitioner Eddie B. Robinson's petition is denied and that this action is dismissed upon its merits.